[No. E046276. Fourth Dist., Div. Two. Sept. 19, 2008.]

JOHN F. MARTIN, Plaintiff and Appellant, v.
RIVERSIDE COUNTY DEPARTMENT OF CODE ENFORCEMENT et al.,
Defendants and Respondents.

COUNSEL

Ackerman, Cowles & Lindsley, Stephen A. Lindsley and Michael W. Sands, Jr., for Plaintiff and Appellant.

Joe S. Rank, County Counsel, Pamela J. Walls, Assistant County Counsel, and Bruce G. Fordon, Deputy County Counsel, for Defendants and Respondents.

OPINION

GAUT, J.—

## 1. Introduction

This is the second appeal involving a $500 code enforcement citation. John F. Martin was cited by the County of Riverside (County) for grading without a permit. After Martin received an unfavorable administrative decision in a code enforcement proceeding, he filed a petition for writ of mandate (Code Civ. Proc., §§ 1094.5, 1094.6) in the superior court. The superior court denied Martin's writ petition but also offered its opinion that the correct procedure was to seek review by filing an appeal to be heard de novo by the superior court as provided by Government Code section 53069.4, subdivision (b)(1), and Riverside County Ordinance (RCO) No. 725, section 7.

In Martin's first appeal to this court, we agreed with the superior court that the correct procedure for Martin to have followed was to seek a de novo appeal in the superior court. We also concluded we did not have jurisdiction to hear the appeal of a limited civil case and we transferred the case to the appellate division of the superior court. (Code Civ. Proc., §§ 85, 904.1, 904.2; Gov. Code, §§ 53069.4, subd. (b)(1), 68915.)

The appellate division then issued an opinion, concluding it did not have jurisdiction to hear an appeal of the superior court decision because no further review of a code enforcement proceeding is permitted beyond the de novo appeal in superior court.

On our own motion, this court directed the case be transferred back to us. (Cal. Rules of Court, rule 8.1008(c)(1)(A).) We now issue a second decision in which we determine that Government Code section 53069.4, subdivision (b)(1), offers alternative procedures for challenging a final administrative decision, either by a petition for writ of mandate or by a de novo appeal to the superior court.[1] We hold the trial court properly denied Martin's writ petition and we affirm the judgment.

## 2. Factual and Procedural Background

Martin owns Temecula real property, traversed by the Tucalota Creek, a seasonal stream. Between September and March 2006, the County's Code Enforcement Division of the Department of Building and Safety issued citations and assessed fines against Martin for grading without a permit. The County particularly cited Martin for grading without permits in violation of RCO No. 457, section 4, subdivision J,[2] and imposed a fine of $500 on March 17, 2006.

In an administrative review determination, a code enforcement officer denied Martin's initial challenge to the $500 citation. Subsequently, a code enforcement hearing officer, George Dickerman,[3] conducted an administrative hearing.

Wayne Durant, a code enforcement officer, testified that a "blue line stream," meaning a natural water course, is located on Martin's property. Martin testified that an existing spillway[4] across the stream had washed out on May 15, 2005. FEMA[5] granted Martin $5,200 to perform repairs and Martin replaced the spillway.

Martin took the position that he could perform emergency repairs without a County grading permit and that he had approval to do so in 1993 from the state Department of Fish and Game and because of the FEMA grant. The County asserted that a County grading permit was nevertheless still required.

---

[1] To the degree the doctrine of law of the case may apply, we choose to disregard it in the interests of justice and to avoid any unjust result. (*Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, 309 [126 Cal.Rptr.2d 516], citing *People v. Shuey* (1975) 13 Cal.3d 835, 845–846 [120 Cal.Rptr. 83, 533 P.2d 211].)

[2] The record citations refer to Riverside County Code section 15.12 which is section 3306.1 of the Uniform Building Code and is also identified in the record as RCO No. 457, section 4, subdivision J.

[3] Dickerman disclosed at the outset that he was an attorney who, 10 years before, had represented a defendant who was sued by Martin concerning flood damage. Martin agreed to waive any objection to Dickerman as the hearing officer.

[4] A spillway had existed at the location since 1985 or earlier.

[5] Federal Emergency Management Agency.

Dickerman issued a decision in favor of the County on May 8, 2006, finding that it was "incumbent upon Mr. Martin to comply with not only FEMA and Department of Fish and Game requirements, but also with the local County agencies that have an immediate concern regarding waterflow and ecological damage that might occur to a streambed that is altered without sufficient inspection and recommendations made by these agencies. This would be particularly true as vegetation growth, density, ecological factors, weather, rainfall averages, and other environmental factors change over time and warrant the alteration of spillway construction requirements, peculiar to a particular area of land."

The administrative decision instructed Martin to file his appeal with the municipal court, an entity that no longer exists after unification of the trial courts. (*General Electric Capital Auto Financial Services, Inc. v. Appellate Division* (2001) 88 Cal.App.4th 136, 141 & fn. 1 [105 Cal.Rptr.2d 552].) Instead, Martin, acting as his own lawyer, filed a petition for writ of mandate as an unlimited civil case in the superior court. (Code Civ. Proc., §§ 1094.5, 1094.6.)[6]

At the hearing on Martin's writ petition, the superior court recognized there was an alternative procedure to the writ petition when the judge commented, "I do not believe this is a CCP Section 1094.5 writ proceedings although, among other things, I did analyze it in the context of that. I think this is a Government Code Section 53069.4 writ proceedings." The court discussed the Government Code and RCO No. 725. It indicated it was considering all evidence submitted, even if it had not been presented at the administrative hearing. The court conducted the hearing both on the writ petition and as a de novo appeal. The court rendered a decision in favor of the County, denying the writ petition.

### 3.   Government Code Section 53069.4

After undertaking a review of the legislative history of Government Code section 53069.4, we have determined there are alternative procedures for seeking review, either by a writ petition or by a de novo appeal.

Government Code section 53069.4 supplies the statutory authority for code enforcement procedures, including an appeal from an administrative decision:

"(a)(1) The legislative body of a local agency, as the term 'local agency' is defined in Section 54951, may by ordinance make any violation of any

---

[6] The County filed a cross-complaint for nuisance, injunctive relief, and damages concerning the unauthorized spillway and Martin's operation of a convenience store on his property. But the cross-complaint was not the subject of the superior court's decision and is not an issue on appeal.

ordinance enacted by the local agency subject to an administrative fine or penalty. The local agency shall set forth by ordinance the administrative procedures that shall govern the imposition, enforcement, collection, and administrative review by the local agency of those administrative fines or penalties. . . . [¶] . . . [¶]

"(b)(1) *Notwithstanding the provisions of Section 1094.5 or 1094.6 of the Code of Civil Procedure*, within 20 days after service of the final administrative order or decision of the local agency is made pursuant to an ordinance enacted in accordance with this section regarding the imposition, enforcement or collection of the administrative fines or penalties, *a person contesting that final administrative order or decision may seek review by filing an appeal to be heard by the superior court, where the same shall be heard de novo,* except that the contents of the local agency's file in the case shall be received in evidence. A proceeding under this subdivision is a limited civil case. . . ." (Gov. Code, § 53069.4, italics added.)[7]

Pursuant to Government Code section 53069.4, the County enacted RCO No. 725 which provides at section 7, subdivision e.2.d, that the "hearing officer's decision shall contain instructions for obtaining review of the decision by the superior court" and at subdivision f.1 and 2, a person may contest a hearing officer's decision "by filing an appeal to be heard by the superior court" to be heard de novo.

Although Government Code section 53069.4 uses the word "appeal" to describe the limited civil proceeding, what seems to be meant is a de novo hearing by a single judge or, as also described in the statute, by a subordinate judicial officer. (Gov. Code, § 53069.4, subd. (b)(3).) In other words, review is available either by writ petition or by a limited de novo appeal to the superior court.

The legislative history supports our interpretation of there being alternate remedies. Government Code section 53069.4 was enacted in 1995 by Senate Bill No. 814 (1995–1996 Reg. Sess.) to provide for the de novo appeal of an administrative order and decision. Additionally, the bill amended Code of Civil Procedure section 1094.6 by adding "the imposition of civil or administrative fines to the decisions which may be challenged by a writ of mandate under Code of Civil Procedure section 1094.6." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 814 (1995–1996 Reg. Sess.) as amended

---

[7] The meaning of "notwithstanding" and the other italicized language in the statute is not wholly clear, so we have consulted the pertinent legislative history to aid our independent statutory interpretation. (*People v. Birkett* (1999) 21 Cal.4th 226, 231–232 [87 Cal.Rptr.2d 205, 980 P.2d 912]; *California Sch. Employees Assn. v. Willits Unified Sch. Dist.* (1966) 243 Cal.App.2d 776, 781 [52 Cal.Rptr. 765].)

June 3, 1995, p. 3; accord, Sen. Com. on Crim. Proc., Rep. on Sen. Bill No. 814 (1995–1996 Reg. Sess.) Apr. 18, 1995, p. 5.)

▉ In summary, Government Code section 53069.4 provides for alternative procedures for challenging an administrative decision like a ruling on a code violation, either by a de novo appeal to the superior court to be heard by a judge or a subordinate judicial officer or by a petition for writ of mandate under Code of Civil Procedure sections 1094.5 and 1094.6. In the present case, Martin elected the latter route. We proceed to review the superior court's denial of his writ petition on the merits.

### 4. Writ Petition

The superior court announced it was denying the petition under any standard of review—de novo appeal, independent review, or substantial evidence—the reason being that Martin should have obtained a grading permit from the County in addition to any other approvals from the state Department of Fish and Game or FEMA. Our review of a trial court's decision reviewing an administrative decision, whether conducted under the substantial evidence test or the independent review test, results in the same conclusion: "Even when . . . the trial court is required to review an administrative decision under the independent judgment standard of review, the standard of review on appeal of the trial court's determination is the substantial evidence test." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 824 [85 Cal.Rptr.2d 696, 977 P.2d 693].) We review purely legal questions independently. (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 515 [113 Cal.Rptr. 836, 522 P.2d 12].)

There is little dispute about the facts. Martin's existing spillway was washed out by flooding. He sought FEMA assistance to repair it. He did not obtain a grading permit from the County.

Martin makes four points on appeal. He asserts that the Fish and Game Code occupies the field and preempts local legislation about grading. He contends he did not need a County permit because he was authorized to make emergency repairs by the state Department of Fish and Game. He also argues the spillway was a private road and subject to an exception under RCO No. 457, section 4, subdivision J.2.10. Finally, he contends there was another exception for moving less than 50 cubic yards under RCO No. 457, section 4, subdivision J.2.7. We conclude substantial evidence supports both the administrative and the superior court's decisions and there is no legal support for Martin's positions.

Fish and Game Code section 1602, subdivision (a), provides: "An entity may not substantially divert or obstruct the natural flow of, or substantially

change or use any material from the bed, channel, or bank of, any river, stream, or lake, or deposit or dispose of debris, waste, or other material containing crumbled, flaked, or ground pavement where it may pass into any river, stream, or lake . . . ." unless the state Department of Fish and Game is properly notified.

At the administrative hearing, Martin submitted a packet of information about the Lake and Streambed Alteration Agreement process, which includes a statement from Fish and Game Code section 1610 that notice to the state Department of Fish and Game or an alteration agreement is not required when "immediate emergency work [is] necessary to protect life or property."

■ RCO No. 457, section 4, subdivision J.2., prohibits grading without a County permit subject to some exceptions: "No person shall conduct any grading or clearing of any kind without first obtaining a grading permit from the building official . . . ."

Martin argues the County ordinance conflicts with the Fish and Game statute. (*Citizens to Enforce CEQA v. City of Rohnert Park* (2005) 131 Cal.App.4th 1594, 1602 [33 Cal.Rptr.3d 208].) He also contends there was an overriding emergency under Fish and Game Code section 1610 and Public Resources Code section 21060.3 demonstrated by the fact that FEMA issued him a check for repairs.

■ As the County explains, the County's grading ordinance is not a local regulation but originates in state housing law, including the Uniform Building Code: "The State Housing Law expressly requires cities and counties to adopt its minimum building standards, including those regarding grading and excavation. (Health & Saf. Code, [§]§ 17910 et seq., 17922, 17958; *Baum Electric Co. v. City of Huntington Beach* (1973) 33 Cal.App.3d 573, 577 [109 Cal.Rptr. 260].)" (*Leslie v. Superior Court* (1999) 73 Cal.App.4th 1042, 1048 [87 Cal.Rptr.2d 312, 87 Cal.Rptr.2d 313].) The State Housing Law, and by extension RCO No. 457, section 4, are of equal dignity and authority with the Fish and Game Code.

■ Furthermore, the notification requirements of Fish and Game Code section 1602, subdivision (a)(1)(E), include a "copy of any other applicable, local, state, or federal permit or agreement already issued." Additionally, the form application for an alteration agreement warns the applicant to obtain any necessary permits from other agencies. Similarly, FEMA acknowledges there may be requirements for local permits. (44 C.F.R. § 206.117(b)(2)(v) (2007).) ■ Therefore, RCO No. 457, section 4, is not preempted by Fish and Game Code section 1600 et seq. and is not displaced by FEMA.

Martin's argument that state Fish and Game Code section 1610, subdivision (a), allowed him to grade without a County permit because it affords an

emergency exception as defined by Public Resources Code section 21060.3 also fails: " 'Emergency' means a sudden, unexpected occurrence, involving a clear and imminent danger, demanding immediate action to prevent or mitigate loss of, or damage to, life, health, property, or essential public services. 'Emergency' includes such occurrences as fire, flood, earthquake, or other soil or geologic movements . . . ." (*Ibid.*)

■ Martin describes the emergency as follows: "The damage to the spillway by severe rains, which denied access to the rear portion of [Martin's] property, was both a sudden and unexpected occurrence" cutting him off from access to a mobilehome. The administrative officer did not make an express finding about there not being an emergency, but he did find a County grading permit was required in spite of Fish and Game requirements and FEMA's. The superior court found there was no emergency because Martin did not repair the spillway for seven months and because there were two residences on the property, the mobilehome being a secondary residence with alternate access. We agree the foregoing does not constitute an emergency such as when an eroding hillside bluff threatened residences with imminent collapse. (See, e.g., *CalBeach Advocates v. City of Solana Beach* (2002) 103 Cal.App.4th 529, 533 [127 Cal.Rptr.2d 1].)

Martin next asserts that the spillway was an existing road, giving him the right to maintain it without obtaining a grading permit, citing RCO No. 457, section 4, subdivision J.2.10. But the evidence presented to the superior court established there were two methods of access to the mobilehome, the spillway and an alternate road that had been washed out previously. If it had been repaired, the alternate road could have been used for access to the mobilehome without the need for the spillway.

Finally, Martin argues that he excavated less than 50 cubic yards, another exception to the requirement for a grading permit. (RCO No. 457, § 4, subd. J.2.7.) But the superior court discounted that evidence and agreed the estimate of 221 cubic yards was more plausible. The superior court also noted Martin did not meet the other requirements for the exception stated in RCO No. 457, section 4, subdivision J.2.7 and 8. In any event, as defined by Uniform Building Code sections 3306 and 3308, Martin was engaged in "fill" not "excavation," making the grading exception for smaller excavations inapplicable.

### 5.  Disposition

We affirm the judgment. The parties shall bear their own costs on appeal.

Hollenhorst, Acting P. J., and McKinster, J., concurred.